Manly, J.
 

 We are at a loss to conceive how any one, having ordinary respopt for the rights of others, could resist the prayer of the petitioner. We are quite sure it could not be
 
 *388
 
 done by any one having the compassionate feelings which should characterise a kinsman or guardian, for the person of an old, feeble and distressed woman.
 

 The facts of the case appear to be these: At the July sessions, 1859, of Wilkes County Court, upon the application and petition of the defendant, Jacks, an inquisition of lunacy was held in respect to the petitioner, and she was declared, at that term, to be
 
 non compos mentis.
 
 This was done in the absence of petitioner, without notice to her of the proceedings, and without any opportunity being afforded'the jury to examine her personally, touching her alleged insanity.
 

 As soon as she had information of this transaction in the County Court, a petition was laid before a judicial officer of the State for a writ of certiorari. This writ was refused, on the ground that there was no appeal, and no right to a certiorari in a case of the kind, but that the application must be made to the County Court for another inquisition, whereby the verdict in the former one might be reversed, or to a court of equity, which was supposed to have a jurisdiction in such matters.
 

 A suit in equity was accordingly brought to the Fall Term, 1859, of the court for Wilkes, and after remaining there until the Spring Term, 1860, was transferred to this Court at Morganton. It was there held by us that the courts of equity for North Carolina, had no jurisdiction in cases of inquisition of lunacy; 5 Jones’ Eq. 417.
 

 This petition for a certiorari was then preferred, the certiorari ordered, and returned into Wilkes Superior Court at its Fall Term, and, upon a hearing in that court, the verdict of the jury, and the judgment of the Court, confirming the same, were set aside, and a new trial granted, and the case ordered on the trial docket. The appointment of guardian was also revoked, and a supersedeas ordered to issue to him. From these orders the defendant, Jacks, appealed.
 

 We regard as of no importance, connected with the merits of the petitioner’s case, that attorneys were employed by a friend to attend, in her behalf,
 
 to
 
 the inquisition of lunacy
 
 *389
 
 at July Term, 1859. She had no notice — was not legally represented, and, what is of still greater importance, was not present, to be seen and examined by the jury.
 

 The question, then, is whether under these circumstances, she is entitled to a certiorari, and, upon the merits of her case, to a reversal of the judgment'of the County Court, and to a new trial. We are clearly of opinion she is. Although at one time, the matter seems to have been regarded as doubtful, it is now conceded that there is a right of appeal from the county court to the superior court- upon the inquisition of lunacy. A certiorari is a substitute for an appeal where the right of appeal has been lost by accident or fraud, and it will be entertained, as such, in all cases where the complaining party has, by the contrivance, or culpable inaction of the other, been deprived of the opportunity to appeal- — -where the complainant shows probable merits, and has been guilty of no unreasonable delay in preferring his petition.
 

 The ¡retitioner’s case, tested by all these requisites, is a proper one for relief. We have already noticed her absence, and ■want of notice, as a sufficient excuse for not appealing. This was by the culpable omission of the person upon whose motion, and under whose management, the inquisition was conducted. For although notice, and the presence of the party to be affected, are not indispensable to give validity to the judgment of the court,
 
 Bethea
 
 v.
 
 McLemore,
 
 1 Ired. 523, yet, the person whose liberty and property is to be taken away, should be ther^. It was the duty of the defendant, Jacks, to notify the petitioner to be there, and the action of the Court without either presence or notice, entitle her to a rehearing, and to a reversal of the former judgment of the Court, if found against truth and right.
 

 As to merits, it is only necessary for us to say that the allegations of the petition set them forth sufficiently, and the affidavits abundantly support the allegations.
 

 There has been no delay attributable to the petitioner; as soon as she heard of the judgment had in the County Court against her, she commenced such proceedings as she was ad
 
 *390
 
 vised were proper. She has continued to prosecute these, in some shape or other, with the utmost diligence, and an}? delay which has attended the attainment of her rights, has been attributable to the inherent infirmity of human tribunals and judgments, and not to any lack of zeal and activity in the pursuit. The delay, therefore, is not in the way of the present assertion of her rights.
 

 The appointment of J. O. Martin, guardian, was incidental to the proceedings instituted by Jacks in the County Court of Wilkes. Should the verdict and judgment rendered thereon, upon the petition of Jacks, be reversed, on certiorari, the connection of Martin with the petitioner, may be abrogated incidentally. A direct proceeding against him for such purpose is not necessary. All that is necessary is notice, and he already has that by reason of his connection with the petitioner.
 

 We repeat that the treatment of the unfortunate subject of this legal strife has been harsh, and calculated to alarm and distress the nervous temperament of persons at her time of life. She should have a fair investigation of her rights, and, if found a proper subject for custody, should be put into kind and gentle hands ; otherwise, be permitted to go free, and do what she will with her property.
 

 The judgment of the Superior Court is correct, and should be affirmed. Let this opinion be certified to the said Court, that it may proceed according to law.
 

 Per Curiam,
 

 Judgment affirmed,